[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE MOTION FOR HEARING ON PUNITIVE DAMAGES
Originally this case was brought in multi-counts. Numerous counts and various defendants were dropped and let out of the case on pretrial proceedings,. The court acting through another judge other than this trial judge dismissed various counts on the basis that the Statute of Limitations barring the prosecution of those counts against those defendants had run. Motion to Strike #150 Motion for Summary Judgment #162; Motion for Summary Judgment #187. At the time the case was reached for jury trial there remained three defendants, Robert L. Day, Sr., Robert L. Day, Jr. and Robert L. Day, Inc. There were various counts against each of those defendants sounding in Connecticut Unfair Trade Practice, (CUTPA), fraudulent misrepresentation; negligent misrepresentation; and negligent installation of a septic system.
When the trial began the court became award of the fact that the jury would have to determine that there was fraud in concealing and failing to disclose the condition (septic tank field installed improperly), before considering the various counts on the merits. Otherwise the applicable three-year Statute of Limitations would have run, barring further prosecution on those counts. General Statutes 52-577. The jury would have to first determine whether there was fraudulent concealment of the cause of action. If the jury were to find that there was a fraudulent concealment of the cause of action it would have the effect of causing the Statute of Limitations to commence running upon the date that the cause of action was first discovered by the plaintiff. See General Statutes52-595.
The parties and the court conferred and it was agreed to bifurcate the case. The case was to be tried in totality. The jury would first decide whether or not there was fraudulent CT Page 1517 concealment effectively causing the Statute of Limitations to be tolled. Thereafter, if the jury should so find, the jury would then be charged as to the various counts of fraudulent misrepresentation, negligent misrepresentation, negligent installation and CUTPA.
Early in the trial an attempt was made by plaintiff's counsel to introduce evidence regarding attorney's fees. After objection and argument the court concluded with agreement that attorney's fees are punitive. The offer was made pursuant to a CUTPA claim (see attached transcript excerpt marked Exhibit 1.) The court is not aware of an offer of evidence concerning attorney's fees offered pursuant to and in support of the fraud count. Such an offer would be evidence for the fact finder, the jury, to consider
At the end of the plaintiff's case this court upon motion of the defendant took another look at the CUTPA count and dismissed it on the basis that the Statute of Limitations for the prosecution on that count barred recovery. Briefly stated, the court reasoned that Connecticut Unfair Trade Practices Law addresses and deals with fraudulent misrepresentation and fraudulent non-disclosure. The CUTPA statute itself has a three year statute of limitation barring a recovery on such a claim. The action in question was brought more than three years after such occurrence. General Statutes 52-595, which addresses the tolling of the statute when there is a fraudulent concealment of causes of action, would not toll a Statute of Limitations as set out in the CUTPA law.
At the end of the presentation of evidence and argument on the first part of the case the jury came in with a verdict in favor of the plaintiffs against Robert L. Day, Inc. only, and found in favor of the individuals Robert L. Day, Sr. and Robert L. Day, Jr. The jury decided that the Statute of Limitation had expired for causes of action against the individuals but not as against the corporation. Thereafter there remained only one defendant, Robert L. Day, Inc.
At this point in time there was an in chamber conference concerning whether or not the plaintiffs intended to pursue their actions against the corporation on all counts or only that count sounding in negligence. There was discussion as to whether or not the corporation had any assets. There was also some discussion regarding insurance coverage. The case was recessed to the following day at which time it was understood that the court would charge the jury on the second part of the case concerning negligent CT Page 1518 misrepresentation, fraudulent misrepresentation and negligent installation of the septic system.
The following day counsel stated to the court in chambers that all counts were to remain because counsel would be seeking punitive damages for attorney's fees in the event of a verdict sounding in an intentional tort. All parties had rested at this point.
As previously noted, at a very early point in the trial of the case an agreement had been made and it is on the record that attorney's fees would be subsequently considered in the event of a plaintiff's verdict on the CUTPA count by the court. The CUTPA count was no longer in the case. This court has no recollection as to any offer of evidence of attorney's fees being made as a question for the jury to determine pursuant to the intentional tort claim prior to all of the parties resting. There is no question that attorney's fees is a question for the jury to decide when the same is considered arising out of a count sounding in fraudulent misrepresentation. No specific offer in that regard on the fraud count was made.
Plaintiff's counsel claims by argument that there was an agreement that attorney's fees were to be heard by the court whether those fees were punitive damages arising out-of the CUTPA count or fraud count. Plaintiff counsel claims that the agreement was entered into in order to avoid putting before the jury prejudicial information that may have affected the jury's ability to decide the underlying counts fairly and impartially.
The defendant claims on the other hand that the court cannot hear and determine attorney's fees arising from the fraud count because that is a question for the jury. The defendant claims that no such offer was made and no agreement was made that the court, after a jury determined that there was fraud, would then consider attorney's fees at a separate subsequent hearing.
The jury during the deliberation on the second part of the bifurcated case against the only remaining defendant, the Corporation, sent out a question regarding attorney's fees. Attached hereto is a excerpt of the court's transcript addressing that particular issue. Subsequently the jury did award a verdict in excess of the out-of-pocket pecuniary damages that the plaintiff could have suffered. Attached hereto is the court transcript addressing that particular issue. (Ex. 2) CT Page 1519
The court concludes that the issue of attorney's fees was felt by the parties and the court to be an issue for the court pursuant to the CUTPA count. The question of the Statute of Limitations had already been heard and decided by another judge prior to this case being reached for trial and it was not anticipated that the trial judge would again address that issue. The trial court did and dismissed the CUTPA count for reasons previously stated. The CUTPA count was taken out of the case after the plaintiff-completed the offer of evidence and before the defendant had offered any defense.
Although there were chambers conferences regarding punitive damages (attorney's fees) at various times during the trial of this case it was at a time in the proceedings when the CUTPA count was pending. The court has no recollection nor does the record disclose any specific offer of evidence for attorney's fees pursuant to the fraud count nor does the court have any specific recollection of any agreement between counsel in chambers or on the record dealing with attorney's fees or punitive damages arising out of the fraud count wherein it was agreed that the issue would become a matter for the court's consideration and not jury consideration. It was not until after the first verdict on the bifurcated verdict was returned to the court that the court became aware that there was some misunderstandings and confusion regarding this issue. It was then that plaintiff's counsel stated that he desired the fraud count against the corporation to stay in the case because he would be seeking attorney's fees. At this point no evidence had been introduced regarding attorney's fees before the jury. The court does conclude that at least in the mind of the plaintiff's counsel he had contemplated some future hearing on the issue of attorney's fees.
During the second part of the jury's consideration against the Day corporation alone, the jury presented the question to the court inquiring about attorney's fees. The record of how the court and counsel addressed that issue is part on the record. Upon a review of the proceedings and the law applicable to this case, the court concurs that the question of attorney's fees and when and how those issues were to be determined is clouded and obscured by the turn of events that occurred during the trial. While the court is empathetic this court remains unable to grant a hearing by the court to determine attorney's fees pursuant to the plaintiff's fraud claim based upon law or equity.
JOHN WALSH, J. CT Page 1520
EXHIBIT #1
No. CV91-0062749 SUPERIOR COURT ANTHONY BARTONE, ET AL JUDICIAL DISTRICT OF MIDDLESEX vs. AT MIDDLETOWN, CONNECTICUT ROBERT L. DAY CO., INC., ET AL OCTOBER 26, 1993
EXCERPT
BEFORE:
 HONORABLE JOHN F. WALSH, JUDGE and a jury of six
Appearances:
For the plaintiffs.
 PHILIP M. BLOCK, ESQ. 254 Prospect Avenue Hartford, CT 06106
For the defendant, Robert L. Day Co., Inc.:
 ROBERT P. VOLPE, ESQ. Howard, Kohn, Sprague Fitzgerald P.O. Box 260896 Hartford, CT 06106-0896
For the defendant individuals:
 JOHN R. MCLAIN, ESQ. P.O. Box 149 Chester, CT 06412
 Patricia Lux Court Recording Monitor 265 DeKoven Dr. Middletown, CT 06457
(There are other proceedings of record not transcribed. The following took place just after the afternoon recess before the jury is brought back into the courtroom.) CT Page 1521
THE COURT: All right, are we all set?
MR. BLOCK: Your Honor, one question. Am I correct that we will be bifurcating this matter as to attorney's fees and punitive damages based upon the verdict as to CUTPA?
MR. VOLPE: It's my understanding, Your Honor, that any punitive damages and attorney's fees are to be determined by the Court.
THE COURT: Yes.
MR. VOLPE: So that it would — I would assume that we would wait for the verdict and then be guided accordingly.
THE COURT: Yes.
MR. BLOCK: Thank you, Your Honor.
THE COURT: There's cases along that line, I don't know if you've researched them. I think there's —
MR. BLOCK: I did.
THE COURT: You did?
MR. BLOCK: Yes, Your Honor.
THE COURT: All right. So, Supreme Court case holding that they come in afterwards with a hearing in attorney's fees, if that's what your pleasures are, in the event that there's a verdict finding a CUTPA violation, then punitive damages may be determined by the Court in regard to attorney's fees. Is that your understanding?
MR. BLOCK: Yes, Your Honor.
MR. VOLPE: I'm sorry, Your Honor, I apologize.
THE COURT: Okay. All right, then bring in the jury.
(There are further proceedings of record not transcribed.) CT Page 1522
No. CV91-0062749 SUPERIOR COURT ANTHONY BARTONE, ET AL JUDICIAL DISTRICT OF MIDDLESEX vs. AT MIDDLETOWN, CONNECTICUT ROBERT L. DAY CO., INC., ET AL OCTOBER 26, 1993
EXCERPT
CERTIFICATION
I hereby certify the foregoing pages are a true and correct transcription of an excerpt of the tape recording of the above referenced case, held in Superior Court Judicial District of Middlesex, Middletown, Connecticut, before the Honorable John F. Walsh and a jury of six, on the twenty-sixth day of October, 1993.
Dated this _____ day of _____ in Middletown, Connecticut.
 _______________________ Patricia Lux Court Recording Monitor
EXHIBIT #2
No. CV91-0062749 SUPERIOR COURT ANTHONY BARTONE, ET AL JUDICIAL DISTRICT OF MIDDLESEX vs. AT MIDDLETOWN, CONNECTICUT ROBERT L. DAY CO., INC., ET AL NOVEMBER 2, 1993
EXCERPT
BEFORE:
 HONORABLE JOHN F. WALSH, JUDGE and a jury of six
Appearances:
For the plaintiffs.
 PHILIP M. BLOCK, ESQ. 254 Prospect Avenue Hartford, CT 06106
For the defendant, Robert L. Day Co., Inc.: CT Page 1523
 ROBERT P. VOLPE, ESQ. Howard, Kohn, Sprague Fitzgerald P.O. Box 260896 Hartford, CT 06106-0896
For the defendant individuals:
 JOHN R. MCLAIN, ESQ. P.O. Box 149 Chester, CT 06412
 Patricia Lux Court Recording Monitor 265 DeKoven Dr. Middletown, CT 06457
(There are prior proceedings of record not transcribed. The following proceedings as transcribed were all held in the absence of the jury.)
THE COURT: All right, I have received a note, through the sheriff, from the jury and I've just given it to the clerk to have him mark it and as soon as he's marked it he's going to hand it back to me and I'm going to read into the record what it says. I've also conferred with counsel in chambers regarding how to answer that note and they have agreed. Do you want to give me the note, please?
All right, the note reads, 11/2/93, it's now about twelve minutes after twelve, I guess this came in about five minutes ago?
THE SHERIFF: Yes, Your Honor.
THE COURT: So it probably was about five after twelve.
It reads: Your Honor, is it possible to know lawyer's fees and court costs?
And how I intend to answer that, and I'll say it for the record, that is not a matter for your concern. CT Page 1524
Mr. Block?
MR. BLOCK: Understood.
THE COURT: All right.
MR. VOLPE: Agreed, Your Honor.
THE COURT: Okay. Should I say anything further?
MR. VOLPE: No, I think it simply ought to be, no, it's not a matter. No, I think it ought to be simple and direct, Your Honor.
THE COURT: All right.
MR. BLOCK: Your Honor, again, way back earlier in the case there was a commitment as to the ability to claim attorney's fees and that was to be heard afterwards, after a verdict came in.
THE COURT: Well, all right, the question is to the jury. All right, bring out the jury.
(There are proceedings of record not transcribed.)
THE COURT: Does anyone want to be heard?
MR. BLOCK: Yes, Your Honor, I'd like to request punitive damages, of course, and attorney's fees,
THE COURT: Well, that's not what I'm talking about, I'm talking about the verdict.
MR. VOLPE: I don't think that the evidence supports that number, Your Honor. I've got my notes here and I think it's somewhere in the range of forty-something thousand dollars. I don't know how they got to sixty-something.
THE COURT: I have some problems with that, also. You've got some problems here. You've got a verdict, it's more than they could come to with the evidence that they have. And that's why I'm asking you, you've got a verdict that says sixty-two thousand five hundred dollars. The CT Page 1525 only question they had before them was for pecuniary damages, only, that means out-of-pocket expenses that — already incurred or in the future.
The maximum that they could have come up with, based upon the evidence before them, as I see it, is the testimony of your engineer, I forget what that was, I haven't got my notes in front of me, thirty —
MR. VOLPE: Twenty-nine — Riebold? Mr. Riebold?
THE COURT: Huh?
MR. VOLPE: Mr. Riebold?
THE COURT: Yes.
MR. VOLPE: Twenty-nine plus his bills.
THE COURT: Twenty-nine thousand plus other out-of-pocket expenses, which they came to what?
MR. BLOCK: Another sixteen thousand dollars, plus there was Mr. Perlsweig had testified as to the need to supervise in accordance with the directions of the Health Department.
MR. VOLPE: That was two thousand.
THE COURT: That was — What's the total? I mean, I'm trying to — Mr. Block, I'm not trying to hurt you, I'm trying to keep a verdict that's going to stand. What I'm saying is, if the Court accepts this verdict and it's beyond where they could have been, what we're heading for is a new trial, aren't we? Or, we have to ask this jury to make some adjustments at this time.
MR. BLOCK: Your Honor, the number I come out to is just about forty-nine thousand. Adding that additional in.
THE COURT: How do you propose we handle this?
MR. VOLPE: I'd have to go through my numbers but it's certainly under fifty thousand dollars. I've got the CT Page 1526 numbers here and I'll simply add them up, Your Honor.
THE COURT: Well, do you want me to let this jury go and then handle this as a matter of law or do you want me to instruct the jury that there is a — that they're going to have to reduce because they cannot — they cannot plug in attorney's fees here, they cannot plug in non-economic damages.
MR. BLOCK: Your Honor, is it permitted to ask them to explain where the sum came from?
THE COURT: No, I can't ask them to explain. I can tell them that the Court has problems. — You see, I didn't say the verdict is accepted and ordered recorded; I said this verdict is noted and ordered recorded. And my problem is, I'm looking for some assistance from counsel in this regard. I'll hear you.
MR. VOLPE: I would say, Your Honor, since it's clearly an error, that they ought to be sent back but I think it can be handled in, one of two ways, but I think it's clearly an error, it's not supported and I think if Your Honor accepts this verdict, then Your Honor will have to address the issue of a remittitur. I don't know whether there's a right way or a wrong way.
MR. BLOCK: I would like to know the elements that they based on it. If there's something that they're considering which is economic that we're not —
THE COURT: I can't tell them, tell me how you came to your verdict. That's not what I'm saying. What I'm saying I can probably do, and I'll do if I have agreement from counsel,-is to say: The Court has problems accepting this verdict because the maximum that could be awarded would be the amount of the out-of-pocket-expenses that had been incurred and that are to be incurred. That you're not allowed to plug in costs, you're not allowed to plug in — award attorney's fees, and you're not allowed to — there was no charge on non-economic damages; in other words, pain and suffering or emotional or any of that. And so, if any of that's in there, your verdict should be adjusted accordingly. CT Page 1527
MR. BLOCK. Okay. That's fine, Your Honor.
THE COURT: How about you?
MR. VOLPE: I'm satisfied with that. The thrust of it is that they can only award the economic damages and there's not enough to support this and they have to — I think you have to send them back.
THE COURT: All right,. If you want me to do that, I'll do that.
MR. BLOCK: Yes, Your Honor.
THE COURT: Okay? And then — if we don't do it that way, we're going to have to do something later on because I don't see how this can jell.
MR. VOLPE: Your Honor, for what it's worth, I have added up the numbers and if Your Honor wants that.
THE COURT: What is it?
MR. VOLPE: My numbers come to a maximum of — let me just make sure that I — forty-five nine eighty ninety. I can break that down if Your Honor wants.
THE COURT: I don't want to get into numbers.
MR. VOLPE: I understand that but I just wanted to —
THE COURT: I don't want to get into numbers, I just want to say that — I'll tell you exactly what I'm going to say. The Court has some difficulties in accepting your verdict for sixty-two thousand five hundred dollars. The plaintiff is entitled to recover only pecuniary damages as I have defined that for you. That is, out-of-pocket expenses incurred in the past and to be reasonably incurred in the future. All right?
They are not — Do you want me to say what they're not entitled to?
MR. BLOCK: Well, just that, as you said before, Your Honor, that you — that they should — CT Page 1528
THE COURT: You're not entitled to plug in or award attorney's fees, you're not entitled to award any kind of emotional award. You know. And if that has been done, it should be deleted. And I'll send them back for a reconsideration.
MR. BLOCK: That's fine, Your Honor.
MR. VOLPE: That sounds fine, Your Honor.
MR. BLOCK: That's agreeable.
THE COURT: All right. And I'll just give them the form back and say, if you're going to make any changes, just cross off that — cross off that figure and put different figure in. Okay? Is that agreeable with everyone?
MR. BLOCK: Yes, Your Honor.
THE COURT: Okay, bring out the jury,
(There are proceedings of record not transcribed.)
THE COURT: Any exceptions to my remarks?
MR. VOLPE: No, Your Honor.
THE COURT: Mr. Block?
MR. BLOCK: No, Your Honor.
Your Honor, would it be appropriate to discuss the punitive damages now?
THE COURT: Huh?
MR. BLOCK: Would it be appropriate to discuss the punitive damages now?
THE COURT: It would be very inappropriate to discuss punitive damages now. We've got — We're in the middle of one issue, let's not get involved in another. All right? CT Page 1529
(There are proceedings of record not transcribed.)
THE COURT: All right, then we'll leave it at that. want to make any motions for further hearings for punitive damages, then do it. You can do it in that manner. We'll set it down for a hearing, if that's the case.
BLOCK: Submit a written motion you mean, Your Honor?
THE COURT: Well, I think — We haven't heard anything, I'm not going to hear it now and if you're going to make a motion for those things, it would give opportunity to defense counsel to be heard on whether or not, you know, what the limitations are and then we'll set it down for a hearing and at that particular time you'll be prepared to do it. So, leave it at that. Okay?
MR. BLOCK: Okay. Thank you very much, Your Honor.
MR. VOLPE: Thank you, Your Honor.
THE COURT: Good luck, everybody. Congratulations.
No. CV91-0062749 SUPERIOR COURT ANTHONY BARTONE, ET AL JUDICIAL DISTRICT OF MIDDLESEX vs. AT MIDDLETOWN, CONNECTICUT ROBERT L. DAY CO., INC., ET AL NOVEMBER 2, 1993
EXCERPT
CERTIFICATION
I hereby certify the foregoing pages are a true and correct transcription of an excerpt of the tape recording of the above referenced case, held in Superior Court Judicial District of Middlesex, Middletown, Connecticut, before the Honorable John F. Walsh and a jury of six, on the second day of November, 1993.
Dated this _____ day of _____ in Middletown, Connecticut.
 _______________________ Patricia Lux Court Recording Monitor
CT Page 1530